OF THE

## STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY.

JUNE TERM, 1899.

59 563
62 300
62 303
62 305
59 563
65 360

THE INHABITANTS OF THE TOWNSHIP OF EAST ORANGE,
IN THE COUNTY OF ESSEX, et al., appellants,

*v.*

THE SUBURBAN ELECTRIC LIGHT AND POWER COMPANY,
respondent.

[Filed November 20th, 1899.]

The act entitled "An act relating to electric light, heat and power companies," approved April 21st, 1896 (*P. L. of 1896 p. 322*), gives extensive power to the corporations referred to in the title to use the public roads, highways, streets, avenues and alleys in the state for the purpose of erecting posts or poles to sustain necessary wires, with the proviso that no posts or poles shall be erected in any street of any incorporated city or town without first obtaining from the incorporated city or town a designation of the streets in which the same shall be placed, and the manner of placing the same.—*Held,* that the municipal corporations referred to in the proviso are such as are called cities and towns *eo nomine,* and that townships are not included in such designation.

563

East Orange *v.* Suburban Electric Light and Power Co.

On appeal from decrees advised by Vice-Chancellor Pitney, who delivered the following opinion in *Suburban Electric Light and Power Co.* v. *East Orange:*

The complainant is a corporation organized under the General Corporation act for the purpose of supplying electric light and power, and in the exercise of its corporate rights has strung certain electric wires along a street known as Central avenue, within the territorial limits of the defendant, the township of East Orange. The municipal authorities of that town threaten to remove said wires by force, and the object of the bill is to restrain such threatened action.

The wires in question are strung upon poles belonging to, and by permission of, a telephone company, which poles were erected and are maintained lawfully, and the right of the company so erecting them to maintain the same, so far as the municipality is concerned, is not challenged. It was admitted that the wires are maintained at such a height as not in anywise to interfere with the use of the streets.

The right of the complainant to so maintain wires is based upon the act of May 10th, 1884 (*P. L. of 1884 p. 331*), which was in substance re-enacted by the act of April 21st, 1896 (*P. L. of 1896 p. 322*). That act provides that a company like the complainant

" shall have full power to use the public roads or highways, streets, avenues and alleys in this state for the purpose of erecting posts or poles on the same to sustain the necessary wires and fixtures, upon first obtaining the consent in writing of the owners of the soil,"

with a provision that

"no posts or poles shall be erected in any street of any incorporated city or town without first obtaining from the incorporated city or town a designation of the street in which the same shall be placed and the manner of placing the same, and that the same shall be so located as in no way to interfere with the safety or convenience of persons traveling on over the said roads and highways, and that the public streets in any of the incorporated cities and towns of this state shall be subject to such regulations as may be first imposed by the corporate authorities of such cities and towns."

East Orange *v.* Suburban Electric Light and Power Co.

The township committee of East Orange, by a special charter, are authorized by subdivision 9 of section 6 of the supplement to the act organizing the township, which supplement was passed March 10th, 1873,

" to *prevent* or regulate the erection or maintenance of any awning, stoop, steps, platform, bay window, swinging gate, cellar door, area, descent into a cellar or basement, sign, banner, post or erection or projection of any kind in, over or upon any street or highway or public place, and to remove the same, when already erected, *at the expense of the owner or occupant* of the premises in front of which the same may be."

By authority of that section alone, on the 11th of October, 1886, the township committee passed an ordinance regulating the mode in which telegraph, telephone or electric light poles should be erected in the city; and the fourth section of that ordinance provides that "all telegraph, telephone or electric light wires shall be placed so as to hang not less than twenty feet above the street crossing over which they are drawn." That is the only provision in that ordinance as to the stringing of wires.

On the 19th of February, 1889, the township committee passed an ordinance which provides

"that no person or persons shall run or suspend across or through any public street in this township any electric wire, except at railroad crossings, without first obtaining the permission of the township committee."

Subsequently, on the 14th of October, 1895, the township committee adopted the following resolution:

"*Resolved,* That consent be and the same is hereby given to the 'Suburban Electric Light and Power Company' (the complainant) to erect poles and string wires within this township for electric lighting purposes, subject to all the provisions and restrictions contained in the ordinances of the township, and especially of a certain ordinance entitled 'An ordinance regulating the erection of telegraph, telephone and electric light poles in the township of East Orange,' adopted October 11th, 1886; provided, however, that no poles shall be erected within the lines of any accepted street within the township without the further consent of the township committee."

It is alleged by complainant and admitted by the defendant that Central avenue, along which the wires in question are sus-

East Orange *v.* Suburban Electric Light and Power Co.

pended, is not an accepted street, but is a street within the control and jurisdiction of the Essex county park commission, subject to certain reserved rights in the defendant.

Under this resolution the wires in question were strung upon the poles of the telephone company, as we have seen, by its consent.

It was held by Vice-Chancellor Emery, in *Inhabitants of Summit* v. *New York and New Jersey Telephone Co., 12 Dick. Ch. Rep. 123*, that the language of the Telephone act, which is substantially the same as that of the Electric Light act above cited, gave the telephone corporation the right to string wires over the streets without the consent of and subject only to proper regulation by the municipal authorities. The regulation contained in the ordinance of the defendant herein of October 11th, 1886, provides only that the wires shall be strung a certain number of feet above the street. No other regulation has ever been ordained. The later ordinance of February 19th, 1889, provides that wires shall not be suspended across any street without first obtaining permission of the township committee. That permission was given by the resolution of October 14th, 1895. And I am of the opinion declared by Mr. Justice Reed in *Hudson Telephone Co.* v. *Jersey City, 20 Vr. 303* (at *p. 307*), that a resolution was quite sufficient to give such a permission and that an ordinance was not necessary for that purpose.

This conclusion renders it unnecessary to consider the debatable questions—first, whether or not the authority given by the above-recited ninth subdivision of section 6 of the defendant's supplement of March 10th, 1873, authorizing it to prevent certain erections, by its true construction included the right to prevent stringing of wires charged with electricity; or second, whether, if such authority was given, it was not, in effect, repealed by the act authorizing electric light companies to string their wires, subject to proper regulations by the municipal authorities. Vice-Chancellor Emery, in the *Summit Case* above cited, held that a right to regulate did not include a right to absolutely prevent the stringing of such wires.

It is urged against the value of the permissive resolution of

East Orange *v.* Suburban Electric Light and Power Co.

October 14th, 1895, that it is entirely general in its character and inefficient because it does not designate any street in which the wires shall be strung. The answer to this is that the provision of the act requiring such designation applies only to the erection of poles and not to the stringing of wires. This is the necessary result of the decision of Vice-Chancellor Emery above referred to. In support of this position, however, the defendant cites the case of *State, Myers et al., pros.,* v. *Hudson County Electric Co. and City of Bayonne, 31 Vr. 350.* But that case relates entirely to the erection of poles, and varies from this in that it was a suit by the state, on the relation of property-owners, to set aside an ordinance of the city which had authorized an electric company to set poles generally in any and all of the streets without designating any particular streets, and under that authority the electric company proposed to set poles along the lands of the prosecutors. The ordinance was set aside as against the prosecutors.

It is also urged that the resolution adds nothing to the force of the provisions of the act of the legislature giving general authority to the complainant corporation to string wires over streets. This is true, and it is only necessary to add that the permission given by the act, as we have seen, is quite sufficient of itself to authorize the mere act of suspending wires across the street. No action on the part of the municipal authorities was necessary to authorize it. The true, proper and only office of the permissive resolution in question was to counteract and suspend in favor of the complainant the restrictive effect, whatever that may have been, of the ordinance of February 19th, 1889.

No right was reserved to the township authorities in the resolution of October 14th, 1895, to revoke the same, nor was any limitation fixed upon the time during which the wires strung under it should remain.

A resolution rescinding that resolution was, after the stringing of the wires, passed by the municipal authorities, and it is claimed by the defendant that it was authorized to make such rescission, and that when rescinded, the authority of the complainant to maintain its wires was destroyed. This argument

is based upon the ground that the permission was a mere license, revocable at the pleasure of the licensor.

I am unable to adopt that view. Considering it is a mere license, it is still a license which has been acted upon, and may not be revoked at the pleasure of the licensor. In support of this proposition I refer, without citing at length, to the clear and forcible language and reasoning of Mr. Justice Reed in the case of *Hudson Telephone Co.* v. *Jersey City, 20 Vr. 303* (at *pp. 305, 306*).

Moreover, the complainant's right to string the wires does not depend alone, if at all, upon the consent of the municipal authorities; it relates back to the legislative authority to string and maintain the wires upon certain conditions. No time is fixed by the legislative authority for the continuance of the exercise of the franchise, and the grant must be presumed to be perpetual, subject, it may be, as it probably is, to the right of the legislature to exercise upon it its police powers from time to time as it in its wisdom may see fit.

It is further urged by the defendant that the original grant to the telephone company of the right to erect poles was, by implication, restricted to the right to use them for the purpose of sustaining telephone wires, which are of a more harmless character than electric light wires. It is urged that the latter are dangerous in their nature, and that the grant to erect the poles should be construed as restrictive in that respect. I am unable to adopt that view. The dangerous character of the wires must be presumed to have been in the mind of the legislature when it gave the general power above referred to. The poles are the private property of the telephone company, and they have a right to use them as they choose so long as they do not maintain a public nuisance. If they are too small to bear the weight that is put on them, or have become weak from age, it is probably within the power of the municipality to order them to be replaced and made safe, and the cases, in my judgment, must be viewed precisely as if those poles stood upon private ground, as was the fact in the *Summit Case* above cited.

The rights of the owners of the soil which supports the poles

upon which the wires in question are strung are not here brought in question. They are quite distinct from the rights of the public in the street, and cannot, in my judgment, be invoked by the defendant in support of its proposed action, for the simple and all-sufficient reason that it is not within the scope of the power of the defendant to enforce those rights.

The proposed action of the common council is probably excited by a desire to compel the electric light company to place its wires under ground. It is not intended by this decision to intimate any opinion as to the power of municipal authorities, under the present state of the law, to bring about that result by proper municipal action.

I will advise an order that an injunction do issue pending the suit.

*Mr. Philemon Woodruff,* for the appellant.

*Mr. Chandler W. Riker,* for the respondent.

The opinion of the court was delivered by

MAGIE, CHIEF-JUSTICE.

Two appeals of the above title were argued together. Each complains of a decree enjoining appellant from cutting down certain wires of the respondent, attached to the poles of a telephone company, in a street within the township of East Orange. One decree was made upon a bill filed by respondent to obtain such relief, at a time when a resolution under which it claimed the consent of the township of East Orange had been given to the stringing of those wires remained unrescinded. The other decree was made upon a bill filed by respondent for the same relief after the municipal authorities claimed to have rescinded the resolution.

These decrees were made upon the advice of Vice-Chancellor Pitney, whose opinion is reported in *41 Atl. Rep. 865.*

An examination of the opinion discloses that the vice-chancellor assumed that the legislative grant of power to such corpo-

rations as respondent is, by the act entitled "An act relating to electric light, heat and power companies," approved April 21st, 1896 (*P. L. of 1896 p. 322*), to use the public roads or highways, streets, avenues and alleys in this state for the purpose of erecting posts or poles on the same, to sustain necessary wires, did not apply in the territory of appellants unless respondent had first obtained from appellant a designation of the streets on which the posts and poles should be placed.

Upon this assumption the learned vice-chancellor proceeded to consider and determine several important questions such as these—whether the permission required by the act of 1896 could be given by a resolution, whether the permission required a designation of the streets in which poles might be erected when the authority to string wires was alone exercised, whether a permission once given became an irrevocable license, and whether a permission thus given would authorize the stringing of such wires on poles of another company having permission to string wires for other purposes thereon.

I deem it unnecessary to determine whether these questions were rightly solved in the court below, for, upon the true construction of the act of 1896, the power thereby conferred upon such companies as the respondent was not limited by any requirement that permission should be first obtained from a township within which the power was exercised.

The power granted by the act was very extensive in its application to the public highways of the state, but it was admittedly within the authority of the legislature to grant.

The power is, however, limited by the proviso, which is expressed in these words :

"Provided, however, no posts or poles shall be erected in any street of any incorporated city or town without first obtaining from the incorporated city or town a designation of the streets in which the same shall be placed and the manner of placing the same."

The proviso is applicable in this case only if appellant comes within its meaning as being a town.

That word is used in our legislation in different senses. *Stout*

East Orange v. Suburban Electric Light and Power Co.

v. *Glen Ridge, 30 Vr. 201.* Whether it is used in a particular statute in a general or in a restricted sense is to be determined by the legislative intent discoverable therefrom. As the word in its general sense includes the municipalities called cities, the express inclusion in this proviso of such municipalities by that name indicates clearly that the word " town " was not used in a general but in a restricted sense, and so would apply only to such municipalities as are towns *eo nomine.*

That such was the legislative intent appears, also, from a consideration of previous legislation upon the same subject.

By the provisions of the act entitled "A further supplement to an act entitled 'An act concerning corporations, approved April 7th, 1875,' which supplement was approved May 10th, 1884 " (*P. L. of 1884 p. 331*), power was conferred upon corporations having similar purposes to those for which respondent was formed as extensive as that conferred by the act of 1896, with a proviso in these terms :

"Provided, however, no posts or poles shall be erected in any street of any incorporated city or town without first obtaining from the incorporated city or town a designation of the streets in which the same shall be placed and the manner of placing the same."

By a supplement to the act of 1884, just cited, the act was amended so that the proviso read thus :

"Provided, however, no posts or poles shall be erected in any street of any incorporated city or town or in any street of any township without first obtaining from the incorporated city or town or from the township committee of such township a designation of the streets in which the same shall be placed and the manner of placing the same." *P. L. of 1893 p. 412.*

The act of 1896 contained the next expression of the legislative will upon this subject. It related to the same class of corporations. It conferred the like powers in public highways. It repealed inconsistent acts and obviously superseded the prior legislation just referred to. When, therefore, we find the proviso to this act omit the words of the supplement of 1893, requiring the permission of the township committee in a township, it is at once obvious that the word " towns " in that proviso was

not intended to include townships. It follows that it must have been intended to require the permission to be obtained only from cities and towns *eo nomine.*

That appellant is a municipal corporation having powers much more extensive than those conferred on ordinary townships and assimilated to the powers granted to towns created under special legislation prior to the adoption of the amendment to the constitution, and towns now organized or capable of being organized under existing legislation, does not prevent this conclusion. For when it is ascertained that the legislature has used the word "towns" in a limited and restricted sense, courts must accept that sense, and cannot by construction extend the meaning beyond the plain legislative intent.

It was upon similiar reasoning that I concurred in the late decision of this court to the effect that legislation expressed to be intended to affect "cities" would not be applicable to the town of Morristown. The trend of legislation had, in my judgment, clearly indicated that such language expressed a legislative intent to confine the legislative act to the municipal corporations named cities, and that such effect should be given to the act even though it was thereby brought under the ban of constitutional prohibition.

In the case before us, no contention has been made that, upon such construction as I have attributed to the act of 1896, it falls within constitutional restrictions, and no consideration has been given to that question.

The result is that respondent was possessed of sufficient authority to string and maintain the wires in question in the public street, and whether it originally acquired or afterwards retained the permission of the township authorities, was immaterial.

Upon this ground I shall vote to affirm the decrees in both cases.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, LUDLOW, COLLINS, LIPPINCOTT, BOGERT, HENDRICKSON, ADAMS, NIXON, VREDENBURGH—14.

*For reversal*—None.